The STATE of Ohio, Appellee,

v.

SKAGGS, Appellant.

[Cite as *State v. Skaggs* (1994), 97 Ohio App.3d 15.]

Court of Appeals of Ohio,
Ashtabula County.

No. 93–A–1846.

Decided Aug. 15, 1994.

*Gregory J. Brown,* Ashtabula County Prosecuting Attorney, for appellee.
*James C. Warren,* for appellant.

---

CHRISTLEY, Presiding Judge.

This is an appeal from a judgment of the Ashtabula County Court, Eastern Area. In this judgment, the court found appellant, Robin Skaggs, guilty of a violation of R.C. 2923.21(A)(3), improperly furnishing firearms to a minor.

On August 13, 1993, deputies of the Ashtabula County Sheriff's Department responded to a report of gunfire from a mobile home located in Lenox Township, in which a thirteen-year-old boy had been nicked in the head by a bullet. Upon arrival, the deputies, along with a S.W.A.T. team, secured appellant's residence, and found appellant's two sons, Rockwell and Robin, Jr., inside. Detective Frey from the Sheriff's Department found three weapons lying on a mattress in a bedroom: two 7.62 mm. Japanese assault rifles and a .22 caliber rifle. The boys were transported to the youth development center at which time they were interviewed by the detectives.

The boys initially stated that they had been discharging the weapons at a garbage dump where they normally shot. However, when confronted with evidence of several spent 7.62 mm. casings found in the bedroom as well as outside the bedroom window, the boys admitted that they had been shooting from inside the mobile home. The boys were not asked whether they had had permission to discharge these guns; however, Detective Frey testified that he did not see any locked cabinets for the storage of either the guns or the ammunition. Appellant was never asked about how the weapons were stored or whether he had placed any restrictions on their use by his sons. Appellant did indicate that his sons shot all the time from the rear of the mobile home.

At trial, the state called appellant's son, Rockwell. He testified that they had taken the guns from an unlocked closet and had acquired the ammunition by breaking the hinges off of a locked box containing the ammunition. He testified that on all other occasions, they target shot under the supervision of their parents. At this point, the state rested and the court denied appellant's motion to dismiss the charge.

Appellant took the stand in his own defense and testified that he kept the weapons in a closet and that the boys had been instructed not to use them when he was not present. He further testified that the ammunition was kept in a box on the other side of the bedroom, and that Detective Frey had never asked him whether the boys had permission to use the guns.

On cross-examination, appellant acknowledged that on a prior occasion, his son, Rockwell, had fired a shot at a man to protect his mother. Upon learning of this, appellant indicated that he wished that his son had shot the son of a bitch. Appellant stated that his wife had been present during this incident, however.

Before this court, appellant advances the following as error:

"The judgment rendered by the Ashtabula County Court, Eastern Area, is erroneous in the following respects:

"1. In overruling defendant's motion for discharge at the close of the State's case and at the close of the evidence;

"2. In that the judgment and finding is not sustained by sufficient evidence;

"3. In that the judgment and finding of the court is contrary to law; and

"4. For other errors occurring at trial to the prejudice of defendant and apparent on the face of the record."

Appellant argues that there was no evidence presented at trial that he "furnished" the firearms to his sons, and that the state failed to present evidence that appellant's sons were under eighteen years of age. Therefore, appellant contends that the trial court's judgment was against the manifest weight of the evidence, based upon insufficient evidence, and contrary to law.

R.C. 2923.21 provides:

"(A) No person shall:

" * * *

"(3) Furnish any firearm to a person under age eighteen, except for purposes of lawful hunting, or for purposes of instruction in firearms safety, care, handling, or marksmanship under the supervision or control of a responsible adult."

Appellant argues that R.C. 2923.21 imposes no duty to *prevent* a minor from acquiring or using a firearm, but rather prohibits the *furnishing* of a firearm to a minor, *i.e.*, a voluntary or proactive act. From this, appellant contends that the state presented no evidence that appellant *acted* in such a manner that would constitute the furnishing of the guns to his sons. Rather, he argues that the only evidence offered as to this point indicates that appellant never gave his sons permission to use his firearms when he was not present, and that appellant's sons had to break the hinges off of a locked box to gain access to the ammunition.

The state counters by arguing that appellant's sons had initially lied about where they had been shooting the guns and that, therefore, the credibility of Rockwell's testimony about the locked ammunition box was in doubt. The state further argues that Detective Frey never found the broken lock, and that appellant never brought this matter to anyone's attention prior to trial.

It would seem that the state would have us shift the burden to *appellant* to establish that he did not furnish the weapons to his sons. However, it is the state's burden to establish that appellant furnished the guns to his sons. A review of Detective Frey's testimony reveals that he did not investigate as to how the boys came into possession of the firearms. While he testified that he did not find any ammunition box with broken hinges, he never testified that he searched for one or questioned appellant or his two sons as to how the boys gained access to the weapons.

In its brief before this court, the state places great emphasis on the issue of whether appellant's sons actually broke into a locked ammunition box to gain access to the ammunition. However, we would note that R.C. 2923.11(B)(1) provides a definition of firearm. This definition specifically provides that "firearm" includes an *unloaded* firearm. Therefore, it is immaterial whether appellant attempted to restrict his sons from free access to the ammunition box. The only issue is whether appellant "furnished" his (unloaded) firearms to his minor sons.

While R.C. 2923.21 fails to provide a definition of "furnish," it is defined in Black's Law Dictionary (5 Ed.1979) 608, as follows:

"To supply, provide, or equip, for accomplishment of a particular purpose. * * * "

Implicit in this definition is the requirement of some type of positive act by which a firearm is supplied, provided, or equipped. This construction is supported by a reading of R.C. 2923.19, which provides:

"(A) No person, * * * possessing * * * any dangerous ordnance, shall negligently fail to take proper precautions:

"(1) To secure the dangerous ordnance against * * * its acquisition or use by any unauthorized or incompetent person * * *."

Where these two statutory sections differ is that R.C. 2923.21 is directed at "firearms" while R.C. 2923.19 is concerned with "dangerous ordnances." The latter clearly encompasses the negligent failure to take proper precautions in securing a dangerous ordnance from acquisition by a minor. The fact that R.C. 2923.21 fails to contain similar language in relation to firearms indicates that it does not encompass a situation where a party fails to act. Rather, some act of supplying, providing, or equipping is necessary to sustain a conviction under R.C. 2923.21.[1]

The testimony brought forth at trial established that appellant kept his firearms in an unlocked closet. Further, there was uncontroverted testimony that the boys were only allowed to use the guns under appellant's supervision. Certainly, given this set of facts, we must conclude that there was insufficient evidence for the trier of fact to conclude that appellant *furnished* firearms to his sons. The state failed to put forth any evidence which would suggest that appellant acted in any manner to supply or equip his sons with his weapons.

---

1. R.C. 2923.11(K) and (L) delineate those devices which are included and excepted from the definition of "dangerous ordnance." It would appear, that appellant's assault rifles would fall within this definition; however, he was never charged with a violation of R.C. 2923.19.

■   Appellant also contends that the state failed to introduce any evidence showing that his sons were under the age of eighteen.

The state counters by noting that appellant stipulated at trial that appellant was the father of the two boys.  Further, Detective Frey testified that when the boys were taken into custody, they were transported to the youth development center, where he was of the understanding that they had been cited for some type of delinquency.  The state argues that this is sufficient circumstantial evidence demonstrating that appellant's sons were under the age of eighteen, thus establishing this element of the charged offense.  We agree.

We find that appellant effectively stipulated to this fact, when, before the state presented its case, his counsel stipulated that appellant's sons did discharge his firearms "without there being any adult present * * *."  This stipulation, along with the other circumstantial evidence, was sufficient to establish the fact that appellant's sons were under eighteen years of age.

We conclude, however, that the state failed to prove that appellant "furnished" his firearms to his sons.  Accordingly, appellant's assignment of error is well taken.

The judgment of the trial court is reversed and the cause is remanded in order for the trial court to enter judgment in favor of appellant.

*Judgment accordingly.*

JOSEPH E. MAHONEY and CACIOPPO, JJ., concur.

MARY CACIOPPO, J., retired, of Ninth Appellate District, sitting by assignment.