OPINION
{¶ 1} Appellant, Shane Curtis, appeals the March 20, 2002 judgment entry of the Ashtabula County Court of Common Pleas, in which he was convicted and sentenced for involuntary manslaughter and improperly furnishing a firearm to a minor.
 {¶ 2} On March 8, 2001, the Ashtabula County Grand Jury indicted appellant on one count of involuntary manslaughter with a firearm specification, a felony of the first degree, in violation of R.C.2903.04(A), and improperly furnishing firearms to a minor, a felony of the fifth degree, in violation of R.C. 2923.21(A)(3). Appellant entered a plea of not guilty to the charges on March 16, 2001. On April 13, 2001, appellant filed a motion to suppress, and a suppression hearing was held. The trial court overruled the motion to suppress on December 11, 2001.
 {¶ 3} On December 19, 2001, a jury trial took place. Patrolman Steven Perkio ("Patrolman Perkio") of the Conneaut Police Department testified that on February 10, 2001, at about 8:00 p.m., while he was on patrol, he received a call that there was a possible shooting at a home located at 371 Mill Street in Conneaut, Ohio. Patrolman Perkio, Patrolman David DiPofi ("Patrolman DiPofi"), and Sergeant Charles Burlingham ("Sergeant Burlingham") responded to the address. Patrolman DiPofi and Sergeant Burlingham made entry into the home. When they entered the home, there was a shooting victim lying on the floor of the living room, later identified as twelve-year-old Angela Boggs ("Angela"). The officers secured the crime scene. Patrolman Perkio observed appellant and Phillip Bowers ("Bowers") in the living room.
 {¶ 4} Patrolman Perkio related that appellant made a statement to him immediately after the shooting. In that statement, he revealed that he was standing in the dining room when he heard a gunshot. He looked into the living room and saw Angela on the floor. According to appellant's statement, this all started when Bowers wanted to check out his .22 Remington semi-automatic caliber rifle. In addition to appellant and Bowers, Jason Dames ("Dames"), Lucas Vickery ("Vickery"), and Stephanie Turner ("Turner") were also present at the time of the shooting; however, Dames and Turner left prior to the arrival of the police.[1]
 {¶ 5} Bowers testified that on February 10, 2001, he went to appellant's home with Dames. Appellant's father, Norm Curtis, and his girlfriend, Lisa Dames, were present but only for a brief moment. Bowers revealed that some of the individuals were drinking and smoking marijuana, all of which appellant supplied. Bowers asked if he could see appellant's .22 Remington semi-automatic caliber rifle. Appellant retrieved the rifle from upstairs and handed it to Bowers in the living room. Bowers recalled that appellant did not check the chamber of the gun to see if it was loaded. Bowers then read his statement in court that was made the day of the incident, which was as follows:
 {¶ 6} "I was at [appellant's] house on Mill Street. I was sitting there with [appellant and Angela]. We were all sitting down listening to music videos. [Appellant's] .22 rifle was propped up against a chair in the living room. I picked up the .22 rifle from the chair. I did this because it was around people and I wanted to get it out of the way.
 {¶ 7} "[Angela] was standing [in] front of the TV set. The rifle was at an angle so the barrel was pointed upwards towards the ceiling. As I was setting the rifle down in the corner, the weapon discharged, and out of the corner of my eye I saw something come out of the barrel. My back was to [Angela], and I heard * * * them say `Oh, my God.' I turned around and saw [Angela] lying on the floor. [Appellant] called the Conneaut Police Department. I was looking for the phone so I could call."
 {¶ 8} Bowers had the gun in his hands when it was discharged and struck Angela. He admitted that he smoked marijuana that evening. He stated that he "was high [and] stoned." Bowers further indicated that once appellant handed him the rifle, appellant left him unsupervised. Bowers testified that he did not aim the rifle at Angela as a joke, nor was he playing Russian Roulette.
 {¶ 9} Dr. Stanley Seligman ("Dr. Seligman"), the Deputy Coroner of Cuyahoga County, performed the autopsy on Angela on February 13, 2001. He determined that within a reasonable degree of medical certainty that the cause of Angela's death was a "gunshot wound of head with perforations of skull and brain." Furthermore, Dr. Seligman revealed that Angela had not consumed alcoholic beverages or any other controlled substance on the night of her death.
 {¶ 10} At the close of the state's case, appellant moved for a Crim.R. 29 motion for acquittal, which was overruled. Vickery testified on behalf of appellant. He related that appellant brought his rifle downstairs. After the shooting, Vickery recalled that it was appellant who called the police. Vickery admitted that it was appellant who provided the alcohol. Appellant then renewed his Crim.R. 29 motion, which was again overruled.
 {¶ 11} The jury returned a verdict of guilty to the charge of involuntary manslaughter, but found that appellant did not have a firearm on his person or under his control while committing the offense. The jury also found appellant guilty of improperly furnishing a firearm to a minor. In an entry dated March 20, 2002, the trial court sentenced appellant to a term of three years for the involuntary manslaughter charge and a term of six months for the improperly furnishing a firearm to a minor charge. The sentences were to run concurrently. Appellant timely filed the instant appeal and now assigns the following as error:
 {¶ 12} "[1.] The trial court erred by denying [appellant's] motion to suppress statements purportedly made by appellant to police officers.
 {¶ 13} "[2.] [Appellant's] convictions for improperly furnishing a firearm to a minor and involuntary manslaughter are not supported by sufficient evidence.
 {¶ 14} "[3.] [Appellant's] conviction[s] are against the manifest weight of the evidence."
 {¶ 15} Under the first assignment of error, appellant alleges that the trial court erred by not suppressing statements he made to police officers in violation of his Miranda rights against self-incrimination.
 {¶ 16} At a suppression hearing, the trial court, acting in its role as the trier of fact, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Mills
(1992), 62 Ohio St.3d 357, 366. A trial court's decision regarding a motion to suppress will not be reversed if it is supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. An appellate court must independently determine, without deferring to the trial court's conclusions, whether the facts meet the applicable standard, as a matter of law. State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 17} If a suspect is in custody, police officers are required to advise the suspect of his Miranda rights prior to questioning him.Miranda v. Arizona (1966), 384 U.S. 436, 478-479. To determine whether one is in custody, courts must focus on how a reasonable person in the detainee's position would have felt if he was in the same position. Statev. Gaston (1996), 110 Ohio App.3d 835, 842.
 {¶ 18} In the case sub judice, Patrolman Perkio's questions to appellant about the shooting were an on-scene investigation, which did not trigger the requirement of Miranda warnings. Id. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." Miranda, supra, at 478. A custodial interrogation has been defined as "* * * questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. The Supreme Court further stated that "[o]ur decision is not intended to hamper the traditional function of police officers in investigating crime. * * * General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." Id. at 477.
 {¶ 19} When Patrolman Perkio began his on-scene questioning of appellant, appellant was not a suspect nor was he in custody or under arrest. While they were sitting at the table, Patrolman Perkio wrote the statement word-for-word as appellant told him what had occurred that evening. Patrolman Perkio gave appellant an opportunity to review the statement and make any corrections, and he had appellant initial all answers and sign the statement at the bottom of each page. Thus, appellant's voluntary statement was not made as the result of any custodial interrogation. Even though Patrolman Perkio termed appellant's statement as an interrogation, he later elaborated that it was questions and answers. The officers arrived on the scene and asked appellant what had happened regarding the shooting. There was no police questioning which rose to the level of a custodial interrogation within the meaning of Miranda. The officers obtained witness statements to assist in determining what events led to Angela's death. Therefore, the requirements of Miranda were not triggered at the time appellant made the statement.
 {¶ 20} The second statement made by appellant was on February 13, 2001, and that statement was made at the police station. However, the testimony at the suppression hearing revealed that appellant was given his Miranda warnings prior to making that statement. At the station, on February 13, the detective informed appellant that he was not under arrest, but nonetheless advised appellant of his Miranda rights. Thus, appellant made a knowing, intelligent and voluntary waiver of his rights. Appellant's first assignment of error lacks merit.
 {¶ 21} Appellant's second and third assignments of error are interrelated and will be addressed in a consolidated manner. For his second assignment of error, appellant argues that his convictions for improperly furnishing a firearm to a minor and involuntary manslaughter were not supported by sufficient evidence because the record revealed that he did not have a particular purpose in allowing a minor to handle the firearm and that his conduct constituted mere negligence. In the third assignment of error, appellant contends that his convictions were against the manifest weight of the evidence.
 {¶ 22} In State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 4-5, this court stated that:
 {¶ 23} "`"(* * *) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. * * *"'
 {¶ 24} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *." (Emphasis sic.) (Citations omitted.)
 {¶ 25} An appellate court must look to the evidence presented to determine if the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt. State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 WL 535675, at 3. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Furthermore, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 26} Applying this standard to the matter at hand, the state was required to present sufficient evidence to establish that appellant committed the offenses of improperly furnishing a firearm to a minor and involuntary manslaughter. The offense of improperly furnishing a firearm to a minor is set forth in R.C. 2923.21(A)(3), which states that no person shall "furnish any handgun to a person who is under twenty-one years of age, except for lawful hunting, sporting, or educational purposes, including, but not limited to, instruction in firearms or handgun safety, care, handling, or marksmanship under the supervision or control of a responsible adult * * *." Because none of these purposes were involved in the possession of the gun by the minor involved here, the trial court limited the inquiry to whether appellant "furnished" a firearm to a minor.
 {¶ 27} In State v. Skaggs (1994), 97 Ohio App.3d 15, and State v.Cornett (Aug. 14, 1996), 1st Dist. No. C-960035, 1996 WL 454809, the two cases appellant relies on in his brief, the appellant did not "furnish" the minors with any firearms. Instead, the appellants had the weapons in their homes, and the minors unbeknownst to the appellants retrieved these guns and used them. In both the Skaggs case and the Cornett case, the appellants did not hand the gun to the minors as in the instant matter.
 {¶ 28} In the case at hand, it is our view that the state presented sufficient evidence that appellant handed the rifle to Bowers when he walked downstairs. There was also evidence offered that appellant did not check the chamber to see if there was any ammunition in it. Thus, the record provided sufficient evidence, which was presented at trial, to prove that appellant improperly furnished a firearm to a minor.
 {¶ 29} Now we will turn the offense of involuntary manslaughter, as set forth in R.C. 2903.04(A), which states that "[n]o person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 30} In the case at bar, evidence was presented that Angela died as a result of a gunshot wound. The state submitted evidence that appellant handed a gun to Bowers, a minor, without checking the chamber. The barrel of the rifle was pointed upwards toward the ceiling, so Bowers wanted to move it. As he was setting it down, the weapon discharged. There was also testimony that appellant provided the minors with alcohol and marijuana, and that Bowers was high when the incident occurred. The offense of furnishing a minor with a firearm is a felony. Therefore, the evidence is sufficient for any rational trier of fact to conclude that appellant caused the death of Angela while committing a felony. Hence, there was sufficient evidence offered to demonstrate that appellant committed involuntary manslaughter.
 {¶ 31} Appellant also argues that the verdict was against the manifest weight of the evidence. Though the evidence may have been sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. Schlee, supra, at 5. When addressing whether a verdict is against the manifest weight of the evidence, a reviewing court examines "`the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'" State v. Davis (1988), 49 Ohio App.3d 109, 113. A judgment of the trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 32} Here, appellant was convicted of improperly furnishing a firearm to a minor and involuntary manslaughter, which the state proved. It is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In the case at hand, the jury must have found the state's witnesses to be more credible. We conclude, after reviewing the record and weighing the evidence and all reasonable inferences, that the judgment of the trial court was supported by competent, credible evidence. There exists substantial evidence upon which a jury could reasonably conclude that all of the elements of improperly furnishing a firearm to a minor and involuntary manslaughter were proven beyond a reasonable doubt. Appellant handed the weapon to Bowers, a minor, without checking the chamber to see if it was loaded. While Bowers, who was high, was moving the rifle, it was discharged and struck Angela causing her death.
 {¶ 33} Likewise, after an examination of the entire record, including the credibility of all the witnesses who testified, it is our view that there was no manifest miscarriage of justice requiring the convictions to be reversed because a jury could reasonably conclude that appellant was guilty of the charged offenses. Appellant's second and third assignments of error are not well-founded.
 {¶ 34} For the foregoing reasons, appellant's assignments of error are not well taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.
Judgment affirmed.
WILLIAM M. O'NEILL and DIANE V. GRENDELL, JJ., concur.
[1] The record reveals that at the time of the incident, Bowers was fifteen years old, Dames was twelve years old, Vickery was twenty-one years of age, and Turner was a minor, but no exact age was given.