OPINION
{¶ 1} Appellant, Alan Corrado, appeals from a judgment entry of the Ashtabula County Court of Common Pleas, denying his motion to suppress. For the reasons that follow, we affirm.
 {¶ 2} On November 9, 2001, the Ashtabula County Grand Jury indicted appellant on the following counts: (1) felonious assault, a second degree felony in violation of R.C. 2903.11(A)(2); (2) possessing weapons under a disability, a fifth degree felony in violation of R.C. 2923.13(A)(3); (3) kidnapping, a second degree felony in violation of R.C. 2905.01(A)(3); and (4) abduction, a third degree felony in violation of R.C.2905.02(A)(2). Appellant pleaded not guilty to the foregoing counts.
 {¶ 3} On April 26, 2002, appellant filed a motion to suppress. The motion to suppress maintained that all physical evidence collected during his arrest should be suppressed predicated upon an unconstitutional search made by the police.
 {¶ 4} The trial court held a suppression hearing. The arresting officer and appellant's girlfriend, Lindsey, were the only witnesses to testify at the hearing. The arresting officer testified that on the afternoon of October 30, 2001, he was dispatched to appellant's residence due to a 911 call reporting a domestic dispute in which a firearm was used. When he approached appellant's residence, the arresting officer saw appellant standing in his driveway talking on a cell phone. The arresting officer stated that because a firearm was reported, he immediately arrested appellant for safety reasons.
 {¶ 5} After the arresting officer read appellant his Miranda rights, he began to question appellant regarding the reported domestic dispute. The arresting officer testified that appellant stated his girlfriend, Lindsey, was "staying with him" and that they had an argument. Appellant then informed the arresting officer that Lindsey was at his neighbor's house.
 {¶ 6} The arresting officer proceeded to the neighbor's house to question Lindsey. Lindsey told the arresting officer that she and appellant had been arguing the entire morning. At some point during the argument, appellant physically forced her into his bedroom and forced her to lie down. Appellant then pointed a gun at her and attempted to shove the gun in her mouth. The arresting officer testified that he examined Lindsey's mouth and noticed a cut on the top of her lip.
 {¶ 7} Lindsey then stated that appellant bound her hands with a belt and threatened to kill her. The arresting officer noted early signs of bruising around Lindsey's wrists, and Lindsey provided the arresting officer with the belt that was used to bind her hands. Ultimately, Lindsey was able to escape from the house and fled to the neighbor's house. The domestic dispute was then reported.
 {¶ 8} Lindsey requested that the arresting officer accompany her to appellant's house to look for the firearm and show the arresting officer where these events took place. The arresting officer testified that prior to entering appellant's house, Lindsey had informed him that she was appellant's girlfriend, that she was staying at his house, and that her clothing was in appellant's house.
 {¶ 9} Upon entering appellant's house, the arresting officer saw a shotgun shell casing on the floor in plain view. He also observed a directional booklet for a hand gun lying on the floor in plain view. Lindsey proceeded to walk the arresting officer through the house explaining what happened in different rooms. While walking through the house, the arresting officer also saw Lindsey's clothing scattered about.
 {¶ 10} Lindsey then sat down with the arresting officer and provided him with a more detailed explanation of the circumstances surrounding the domestic dispute. In doing so, Lindsey informed the arresting officer that she did not live at appellant's house on a permanent basis. Rather, she told him that her permanent residence was with her mother in Austinburg, Ohio, and she stayed at appellant's house three or four nights per week. Accordingly, the arresting officer determined that a warrant would be required to search the house for the firearm and immediately left the house.
 {¶ 11} The arresting officer proceeded to approach appellant and asked if he would consent to a search of his house. Appellant initially consented to the search, but then withdrew his consent. As a result, the arresting officer phoned in a request for a court issued warrant to search appellant's house. The court issued the warrant, and police officers, while executing the search, obtained the firearm used by appellant during the domestic dispute.
 {¶ 12} Lindsey testified that she and appellant had been dating for two months. She stated that although her permanent residence was with her mother in Austinburg, Ohio, she would typically stay at appellant's house three or four nights per week. Lindsey further testified that she kept clothing, school books, and toiletries at appellant's house. But Lindsey conceded she did not have a key to appellant's house and, therefore, could not come and go as she pleased. Instead, she had to wait for appellant to call and invite her over to his house.
 {¶ 13} Following the suppression hearing, the court entered judgment denying appellant's motion to suppress. The court found that the arresting officer had a reasonable basis to believe that Lindsey had authority to give consent to enter appellant's house. In addition, the court determined that Lindsey had "sufficient interest or authority in [appellant's] residence for consent." Accordingly, the court concluded that the arresting officer could reasonably rely upon Lindsey's authority to properly enter appellant's house without a warrant.[1]
 {¶ 14} From this judgment, appellant filed a timely notice of appeal and now sets forth the following assignment of error for our consideration:
 {¶ 15} "The trial court erred to the prejudice of appellant when it overruled appellant's motion to suppress."
 {¶ 16} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284, 288.
 {¶ 17} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank, 11th Dist. No. 2001-L-054, 2002-Ohio-1337.
 {¶ 18} Under his sole assignment of error, appellant argues that the trial court erred in denying his motion to suppress, as the evidence failed to establish that Lindsey had authority to consent to the arresting officer's cursory search. Also, appellant contends that the arresting officer could not form a reasonable belief that Lindsey had such authority. He further maintains that the police officer could not rely upon Lindsey's consent, as appellant was present when she gave her consent.
 {¶ 19} Generally, the Fourth Amendment to the United States Constitution prohibits the warrantless entry of a person's home whether to make an arrest or to conduct a search for specific objects. State v.Hatcher, 11th Dist. No. 2002-A-0100, 2004-Ohio-2451, at ¶ 15. This prohibition, however, does not apply to situations in which voluntary consent has been given either from the individual whose property was searched or from a third party who possesses common authority over thepremises. U.S. v. Matlock (1974), 415 U.S. 164, 171. "Common authority" is defined as follows:
 {¶ 20} "Common authority is * * * not to be implied from the mere property interest a third party has in the property. * * * [B]ut rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."Matlock at 171, fn.7.
 {¶ 21} The burden of proving "common authority" lies with the state. Hatcher at ¶ 16.
 {¶ 22} Here, we disagree with the trial court's finding that Lindsey had a sufficient interest in appellant's house to consent to the arresting officer entering the home. The evidence shows that Lindsey, as appellant's girlfriend, did typically spend the majority of any given week at appellant's house and did keep some of her personal belongings at appellant's house. However, the evidence also established that Lindsey and appellant did not share joint access or control of appellant's home. In particular, Lindsey was unable to visit appellant's home when she pleased. Rather, appellant determined when Lindsey would stay at his house. This is demonstrated by the fact that Lindsey did not own a key to appellant's house and that she would wait for appellant's invitation before staying at his house.
 {¶ 23} Clearly, appellant had retained sole access and control over his premises, while Lindsey was merely an invited guest. Accordingly, the state failed to meet its burden of proving that "common authority" existed between appellant and Lindsey.
 {¶ 24} Nevertheless, the absence of "common authority" does not necessarily render the warrantless search unconstitutional. In Illinoisv. Rodriguez (1990), 497 U.S. 177, the United States Supreme Court extended the parameters of a valid warrantless search by deciding the following issue: "[w]hether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not[.]" Id. at 179. The Court determined that even if a third party does not have "common authority" over the area to be searched, and therefore cannot consent to a search, the search is valid if the facts available to the police officer would lead a man of reasonable caution to believe that the third party had actual authority to consent. Id. at 188-189.
 {¶ 25} In short, we must determine whether the arresting officer's belief that Lindsey had authority to consent to his entering appellant's home was reasonable, based upon the facts before the arresting officer.
 {¶ 26} Prior to entering appellant's home, the arresting officer spoke with appellant and questioned Lindsey with respect to the circumstances surrounding the domestic dispute. Both appellant and Lindsey informed the arresting officer that Lindsey was staying with appellant at his house. The description of the facts surrounding the domestic dispute revealed to the arresting officer that appellant and Lindsey were boyfriend and girlfriend and involved in an intimate relationship. The facts also established that Lindsey was spending the night at appellant's house and that she kept her clothing and toiletries at appellant's house. The arresting officer testified that after gathering these facts, he presumed that appellant and Lindsey were living together, and that Lindsey had the authority to consent to his entrance of appellant's home.
 {¶ 27} The foregoing facts provided the arresting officer with an adequate basis to reasonably believe that Lindsey had authority to consent to his entering appellant's house. Of particular importance was appellant's admission to the arresting officer that Lindsey was staying with him. This, in conjunction with the other relevant facts, would lead a reasonable man to believe that appellant and Lindsey shared "common authority" of appellant's house.
 {¶ 28} It is also important to note that any facts which would reduce the arresting officer's reasonable belief were not revealed until after the initial cursory search had commenced. Once these facts were related to the arresting officer, he properly exited appellant's home and applied for a search warrant. The search resumed once the court issued a search warrant, and the weapon was found while executing the warrant. These events establish that when the arresting officer's reasonable belief with respect to Lindsey's authority to consent was diminished he took the appropriate step of terminating the search until a warrant was obtained.
 {¶ 29} Accordingly, the trial court correctly found that the arresting officer had a reasonable basis to believe that Lindsey had authority to consent to enter appellant's house for the initial cursory search. This portion of appellant's assignment of error is not well-taken.
 {¶ 30} Appellant further asserts that because he was present at the time of the initial search the arresting officer could not form a reasonable belief with respect to Lindsey's authority to consent. However, a review of Rodriguez and case law from our court establishes that appellant's presence at the time of the initial search is irrelevant to the arresting officer's ability to form a reasonable belief. See, e.g., State v. Rudge (Dec. 20, 1996), 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807. Specifically, in Rodriguez, the defendant's ex-wife gave police consent to enter the defendant's apartment while he was inside the apartment. Despite the defendant's presence, the police were not precluded from forming a reasonable belief that his wife could consent to their entering the apartment. Thus, with respect to the arresting officer's reasonable belief, appellant's presence at the location of the search is inconsequential. This portion of appellant's assignment of error is also not well-taken.
 {¶ 31} In the alternative, even assuming that the arresting officer's initial search was improper, the state demonstrated that the evidence was inevitably discovered during the course of a lawful search. Under the inevitable discovery doctrine, "illegally obtained evidence is properly admitted in a trial court proceeding once it is established [by the state] that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." State v.Perkins (1985), 18 Ohio St.3d 193, syllabus.
 {¶ 32} The inevitable discovery doctrine is applicable when (1) there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct; and (2) the government was actively pursuing an alternative line of investigation at the time of the violation. Hatcher at ¶ 24, citing U.S. v. Shugart
(E.D.Tx. 1995) 889 F.Supp 963, 976. In other words, "the doctrine may apply where, in addition to the existence of probable cause, the police had taken steps in an attempt to obtain a search warrant." U.S. v. Souza
(C.A. 10, 2000), 223 F.3d 1197, 1203.
 {¶ 33} In the case sub judice, the arresting officer's initial search did not produce the firearm that was used during the domestic dispute. When the arresting officer determined that Lindsey may not have authority to consent to a search, he immediately applied for and obtained a valid search warrant. During the execution of the search warrant, the police obtained the firearm. These facts demonstrate that the firearm would have inevitably been obtained regardless of the initial search and that an alternative line of investigation was commenced at the time of the alleged violation. For this additional reason, appellant's assignment of error is not well-taken.
 {¶ 34} Based upon the foregoing analysis, appellant's sole assignment of error is without merit. We hereby affirm the trial court's denial of appellant's motion to suppress.
O'Neill, J., Rice, J., concur.
[1] This matter proceeded to trial and appellant was found guilty on all charges.