OPINION
{¶ 1} Franklin D. Frye appeals from the denial of his motion to suppress, in a case resulting in his conviction for having a weapon while under disability, assault of a peace officer, possession of methamphetamine, and possessing criminal tools. We reverse and remand this matter.
 {¶ 2} September 29, 2006, Mr. Frye was indicted by the Ashtabula County Grand Jury on five counts: Count One, illegal assembly or possession of chemicals for *Page 2 
the manufacture of drugs, in violation of R.C. 2925.041, a third degree felony; Count Two, having weapons while under disability, in violation of R.C. 2923.13, a third degree felony; Count Three, assault of a police officer, in violation of R.C. 2903.13, a fourth degree felony; Count Four, possession of methamphetamines, in violation of R.C. 2925.11, a fifth degree felony; and, Count Five, possessing criminal tools, in violation of R.C. 2923.24, a fifth degree felony.
 {¶ 3} October 5, 2006, Mr. Frye was arraigned, and pleaded not guilty.
 {¶ 4} November 16, 2006, Mr. Frye moved to suppress evidence relating to a search of his recreational vehicle occurring September 9, 2006. The state filed its opposition December 21, 2006.
 {¶ 5} A suppression hearing was held December 27, 2006. The following facts are derived from the transcript.
 {¶ 6} September 8, 2006, Officer Michael Palinkas of the city of Geneva Police Department contacted his uncle, Mr. Robert W. Perkins, regarding the possible manufacture and distribution of methamphetamines from Mr. Perkins' property at 192 West Street, Geneva Township, by Mr. Perkins' cousin, Franklin D. Frye. Mr. Frye was living in a recreational vehicle belonging to his mother, parked on the property. Mr. Perkins signed a form consenting to the search of his property by authorities.
 {¶ 7} September 9, 2006, not having obtained a warrant, Deputies Sheri Allen and Anthony Mino, of the Ashtabula County Sheriff's office, accompanied by Officer Palinkas, went to Mr. Frye's RV. The testimony of the three officers from the suppression hearing is consistent. Deputy Allen knocked on the door of the RV, and Mr. Frye answered, stepping out. Deputy Allen asked him if she might search the RV, *Page 3 
and he willingly agreed, sitting down in a chair next to a fire ring outside the vehicle. Upon entering the RV, Deputy Allen spotted various items on a table: a glass pipe with black residue inside it, razor blades, a glass with white residue on top, and a cell phone.
 {¶ 8} In the meantime, Officer Palinkas had been speaking with Mr. Frye. Officer Palinkas testified he told Mr. Frye of their suspicion of possible methamphetamine activity, including manufacture, at his vehicle. Officer Palinkas testified that Mr. Frye told him he was terminally ill with hepatitis; that he had used drugs since childhood; and that he had discovered some items on the property he thought might be related to manufacturing methamphetamines, which he had recently burned. When asked by Officer Palinkas what his drug of choice was, Mr. Frye replied methamphetamines, which he used medicinally. Officer Palinkas asked whether there was any methamphetamine in the RV, to which Mr. Frye replied, no, but that he had some in his pocket.
 {¶ 9} Overhearing this last exchange, Deputy Mino took possession of the methamphetamine in Mr. Frye's pocket, then asked him whether there was anything else the officers should know. Mr. Frye replied he had a gun in the RV. Deputy Mino informed Deputy Allen, and placed Mr. Frye under arrest, handcuffing him. In the RV, Deputy Allen found a shotgun, along with baggies of white crystal, acetone, matchbooks, and a probable scanner.
 {¶ 10} The officers also found Coleman fuel outside the RV.
 {¶ 11} Testifying on his own behalf at the suppression hearing, Mr. Frye gave a slightly different account of events. He stated he was ordered to leave the RV by the *Page 4 
officers, and was handcuffed immediately, without ever being told he was under arrest. He stated the methamphetamines in his pocket were found during a pat down.
 {¶ 12} By a judgment entry filed January 2, 2007, the trial court accepted the account of events as related by Officer Palinkas and Deputies Allen and Mino, and overruled Mr. Frye's motion to suppress.
 {¶ 13} The matter came on for jury trial February 12, 2007. February 13, 2007, the jury found Mr. Frye not guilty of Count One, illegal assembly or possession of chemicals for the manufacture of drugs, but guilty on the remaining counts. The trial court filed its judgment entry on the verdict February 14, 2007, and an amended judgment entry to correct a scrivener's error February 15, 2007. Sentencing hearing was held that same day, Mr. Frye being sentenced to a total term of imprisonment of five and one half years, with up to three years of post-release control.
 {¶ 14} March 2, 2007, Mr. Frye timely noticed this appeal, assigning a single error:
 {¶ 15} "Whether the [c]ourt erred in overruling the motion to suppress."
 {¶ 16} Mr. Frye raises two issues in support of this assignment. First, he argues he was subjected to custodial interrogation without benefit of his Miranda rights. Second, he argues his consent for a search of the RV was not freely and voluntarily given.
 {¶ 17} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284, 288. *Page 5 
 {¶ 18} On review, an appellate court must accept the trial court's findings of fact if they are supported by some competent and credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must then independently determine, as a matter of law, whether the applicable legal standard has been met. Id. See, also, State v. Swank, (Mar. 22, 2002), 11th Dist. No. 2001-L-054, 2002 Ohio App. LEXIS 1345, at 8.
 {¶ 19} Under his first issue, Mr. Frye argues he was subjected to custodial interrogation by Officer Palinkas regarding the methamphetamines in his pocket, without benefit of Miranda. We agree.
 {¶ 20} "If a suspect is in custody, police officers are required to advise the suspect of his Miranda rights prior to questioning him.Miranda v. Arizona (1966), 384 U.S. 436, 478-479 * * *. To determine whether one is in custody, courts must focus on how a reasonable person in the detainee's position would have felt if he was in the same position. State v. Gaston (1996), 110 Ohio App.3d 835, 842 * * *."State v. Curtis, 11th Dist. No. 2002-A-0025, 2003-Ohio-6085, at ¶ 17. (Parallel citations omitted.)
 {¶ 21} In this case, the testimony of the two deputies and Officer Palinkas indicates that, while Deputy Allen searched the RV, Officer Palinkas informed Mr. Frye they were investigating suspicions of drug activity; and then, that the officer asked Mr. Frye what his favorite drug was, and whether he had any. It was following this that Mr. Frye told Officer Palinkas of the methamphetamines in his pocket. Under these circumstances — with police searching his RV, and questioning him about drug use and activity — no reasonable person could conclude anything but that he or she was under arrest. Mr. Frye should have been read his rights. He was not. Any evidence *Page 6 
stemming from the seizure of the drugs in Mr. Frye's pocket should have been suppressed.
 {¶ 22} The first issue has merit.
 {¶ 23} Under his second issue, Mr. Frye, a known drug user and former felon, argues that his consent to the search of his RV was not voluntary. Essentially, his point is that no person of similar background would feel free to deny consent to search property, when three police officers show up at the door.
 {¶ 24} "`It is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable.' Payton v. New York (1980), 445 U.S. 573, 586 * * * (citation omitted). The United States Supreme Court has made clear that `in terms that apply equally to seizures of property and seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.' Id. at 590. `Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.' Id.; see, also,State v. Howard (1991), 75 Ohio App.3d 760, 768 * * *; State v.Martin, 11th Dist. No. 2002-P-0072, 2004-Ohio-3027, at ¶ 17." State v.Pape, 11th Dist. No. 2004-A-0044, 2005-Ohio-4657, at ¶ 16. (Parallel citations omitted.)
 {¶ 25} "Generally, the Fourth Amendment to the United States Constitution prohibits the warrantless entry of a person's home * * *. This prohibition, however, does not apply to situations in which voluntary consent has been given * * * from the individual whose property was searched * * * [.]" State v. Corrado, 11th Dist. No. 2004-A-0067,2005-Ohio-6160, at ¶ 19. "The state bears the burden of proving that consent was given freely, voluntarily, and was not the result of coercion, express or implied. Schneckloth *Page 7 v. Bustamonte (1973), 412 U.S. 218, 248 * * *. Voluntariness is a question of fact to be determined from the totality of the circumstances. Id. at 249." State v. Rudge (Dec. 20, 1996), 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807, at 15. (Parallel citations omitted.)
 {¶ 26} "`* * * [W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is notsatisfied by showing a mere submission to a claim of lawfulauthority.' (Emphasis added.)" State v. Robinette (1997),80 Ohio St.3d 234, 243, quoting Florida v. Royer (1983), 460 U.S. 491, 497.
 {¶ 27} Obviously, there were no exigent circumstances pertaining to the search of Mr. Frye's RV: this was a pre-planned, warrantless search, relying for its validity solely on his consent. Under the totality of the circumstances, that consent cannot be deemed voluntary. Three police officers, without a warrant and without probable cause, showed up at Mr. Frye's door, seeking to search his home. This implies coercion. That invalidates his consent. Cf. Robinnette at 242-243. While the United States Supreme Court has refused to adopt a "waiver statement" as a requirement for showing a search is voluntary, see, e.g.,Robinette at 242, in this case, the police had already obtained a written consent from Mr. Perkins to search his grounds. They could have provided a similar document to Mr. Frye when seeking to search his RV.
 {¶ 28} In sum, "mere submission" by Mr. Frye "to a claim of lawful authority" was no substitute for a warrant.
 {¶ 29} The second issue has merit. *Page 8 
 {¶ 30} The judgment of the Ashtabula County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this opinion.
 {¶ 31} It is the further order of this court that appellee is assessed costs herein taxed. The court finds that there were reasonable grounds for this appeal.
MARY JANE TRAPP, J., concurs with Concurring Opinion.
TIMOTHY P. CANNON, J., dissents with Dissenting Opinion.