Daniel R. FOUTZ, Jeffrey Tims Mary L. Carson, and Rebecca A., Doxford, Plaintiffs,

v.

THE CITY OF WEST VALLEY CITY, et al. Defendant.

No. 2:03 CV 1116 DS.

United States District Court, D. Utah, Central Division.

Nov. 24, 2004.

Robert B Sykes, Alyson E. Carter, Robert B Sykes & Associates, for plaintiffs.

Mr. Allan L Larson, Snow Christensen & Martineau, Salt Lake City, UT, for defendants.

## MEMORANDUM OPINION AND ORDER

SAM, Senior District Judge.

## I. INTRODUCTION

Plaintiffs filed this action pursuant to 42 U.S.C. § 1983 alleging Defendants violated their Fourth Amendment rights. The Fourth Amendment, applicable to the states through the Fourteenth Amendment, protects individuals from unreasonable searches and seizures. *See e.g. Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Plaintiffs' claims arise out of events that occurred during the early morning hours of July 13, 2003, when West Valley City Police Officers responded to an apartment occupied by Plaintiffs on a report of domestic disturbance.[1] A neighbor who called police reported hearing a female screaming for help followed by loud banging and crashing noises lasting for approximately 20 minutes. After delaying approximately 30–36 minutes after arriving on the scene police made a warrantless entry and search of the apartment.

Presently pending before the court are cross-motions for summary judgment. Plaintiffs assert they are entitled to summary judgment on their Fourth Amendment claims. Defendants move for summary judgment on the grounds of qualified immunity. In the alternative, Defendants request additional time to conduct discovery pursuant to Fed.R.Civ.P. 56(f).

---

1. Plaintiffs Foutz and Carson were overnight guests of Plaintiffs Tims and Doxford, lessees of the apartment.

## II. SUMMARY JUDGEMENT STANDARD

Under Fed.R.Civ.P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[2]  *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the non-moving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (2d ed.1983).

When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the record and affidavits, if any, he believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the record to support the nonmovant's case.[3] *Id.*, 477 U.S. at 323, 106 S.Ct. at 2554, 91 L.Ed.2d at 275. "[T]here can be no issue as to any material fact ... [when] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

> If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakenly favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

---

**2.** Whether a fact is material is determined by looking to relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**3.** In his dissent in *Celotex*, Justice Brennan discussed the mechanics for discharging the initial burden of production when the moving party seeks summary judgment on the ground the nonmoving party—who will bear the burden of persuasion at trial—has no evidence:

> Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

477 U.S. at 323, 106 S.Ct. at 2557–58, 91 L.Ed.2d at 279 (citations omitted).

there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . .

*Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Id.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

## III. DISCUSSION

### A. Violation of Constitutional Right

The Defendant Officers have raised the defense of qualified immunity to Plaintiffs' claims that their constitutional rights were violated. Once a qualified immunity defense is asserted, the plaintiff is required to show that (1) the defendant violated a constitutional or statutory right and (2) the right violated was clearly established when the violation occurred. *See Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1312 (10th Cir.2002). In evaluating a defense of qualified immunity, the court is directed to first decide whether Plaintiffs have alleged a constitutional violation.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." . . . The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." . . . To determine whether a

plaintiff can overcome the qualified immunity defense, "first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right." . . . Order is important; we must decide first whether the plaintiff has alleged a constitutional violation, and only then do we proceed to determine whether the law was clearly established.

*Roska el rel. Roska v. Peterson,* 328 F.3d 1230, 1239 (10th Cir.2003) (citations omitted).

### 1. Warrantless Entry

It is undisputed that the Defendant Officers failed to obtain a warrant before entering the apartment. "[A] warrantless search is presumptively unreasonable under the Fourth Amendment and therefore invalid unless it falls within a specific exception to the warrant requirement." *Roska,* 328 F.3d at 1240.

■■■ Emergency situations involving endangerment to life fall within the exigent circumstances exception to the warrant requirement. *United States v. Wicks,* 995 F.2d 964, 970 (10th Cir.), *cert. denied,* 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993). The basic elements of the exigent circumstances exception are that:

(1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.

*United States v. Smith,* 797 F.2d 836, 840 (10th Cir.1986).[4] In determining whether

---

**4.** The government bears the burden of demonstrating exigent circumstances that over-

exigency existed, the court examines the circumstances "as they would have appeared to prudent, cautious, and trained officers." *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir.1998), *cert. denied*, 526 U.S. 1159, 119 S.Ct. 2048, 144 L.Ed.2d 215 (1999). The question is not whether one of the Plaintiffs was actually at risk or in need of aid, but whether the Defendant Officers were reasonable in believing that exigent circumstances existed.

Plaintiffs generally acknowledge the foregoing principle of law, but contend that because Officers waited approximately 36 minutes after arriving on the scene to force entry into the apartment, there were no exigent circumstances justifying warrantless entry as a matter of law.

**(a) reasonable grounds—immediate need to protect the life of another**

█ The facts of record reflect that Officers had reasonable grounds to believe that there was an immediate need to protect the life of another. Officers responded in the early morning hours to a report by a neighbor that there was a fight in the apartment above her of approximately 20 minutes duration and that she heard a woman screaming for help followed by loud banging and crashing noises. That report was corroborated by other witnesses at the scene. Witnesses also told Officers that prior to hearing sounds of a fight and a woman screaming for help they saw two males and two females on the balcony of the apartment drinking alcohol. As Officers knocked on the door they heard someone inside the apartment approach the door and walk away. Another neighbor informed officers that as they began to knock on the door she saw someone inside turn off a TV in the bedroom. Officers knocked on the door, rang the door bell and announced their presence for

come the presumptive unreasonableness that attaches to a warrantless entry. *Wicks*, 995

approximately 20 minutes. During this time a neighbor attempted unsuccessfully to get a pass key from the landlord. An unsuccessful attempt was also made to get a telephone number for the apartment. Taped to the outside of the apartment entry door was a belligerent note telling a "Sam" to leave. When a supervising officer, Sergeant Pearce, arrived at the scene, he placed several telephone calls to attorneys before reaching one who advised that officers had sufficient reason to force entry. Officers again knocked on the apartment door and announced to the occupants their intent to force entry if the door were not opened. When there was no response Officers forced entry.

"Delay alone ... does not bar reliance on the emergency aid exception." *State of Arizona v. Sharp*, 193 Ariz. 414, 973 P.2d 1171, 1176 (1999), *cert. denied*, 528 U.S. 936, 120 S.Ct. 341, 145 L.Ed.2d 266 (1999)(reasoning that delay of entry for approximately 40 minutes due to possible officer reluctance to make warrantless entry did not bar application of emergency aid exception to warrant requirement). *See also, United States v. Rhiger*, 315 F.3d 1283 (10th Cir.), *cert. denied*, 540 U.S. 836, 124 S.Ct. 90, 157 L.Ed.2d 65 (2003)( delay of 30 minutes before entering residence did not undermine officer's determination that cooking methamphetamine poses threat to public safety); *United States v. Jones*, 635 F.2d 1357,1362 (8th Cir.1980) ("[w]hen the police have a reasonable suspicion that someone is injured or that the public safety is in jeopardy, but refrain from taking immediate action in an effort to confirm or deny the suspicion, and then act once they have received no indication that the danger has been dissipated, the

F.2d at 970.

waiting period does not defeat the applicable exception to the warrant rule).

The record here suggests that Officers' delay in entering was due to a reluctance to make a warrantless entry. The 30–36 minute delay from Officer arrival to entry does not undermine the objective evidence of a fight, screams for help by a female occupant of the apartment, followed by loud banging and crashing noises. The statements by neighbors that the occupants of the apartment had been on the balcony shortly before coupled with the lack of any response to repeated knocking and ringing of the door bell also supported Officers' reasonable belief that exigent circumstances existed. Confronted with that evidence, Officers were objectively reasonable in concluding that a female occupant of the apartment could have been seriously injured.

**(b) officer motivation**

The evidence of record reflects a concern on the part of at least 3 separate witnesses that someone in the apartment occupied by Plaintiffs may be seriously injured. That concern was conveyed to Officers who acted on the information. There is no evidence of record that the Defendant Officers were motivated by an intent to arrest and seize evidence. Indeed, the only reason Officers were at the apartment was in response to a neighbor's report that there were sounds of a fight, screams for help, and the neighbor's concern that a female occupant of the apartment might be injured.

**(c) reasonable basis—approaching probable cause**

Many of the same facts justifying Officers' belief that there was an immediate need to protect the life of another, also suggest some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched. Police received a report of a domestic disturbance, that a woman was screaming for help, followed by loud banging and crashing noises. When Officers arrived, other neighbors gave similar reports. When police knocked on the apartment door, the television was switched off, someone was heard walking around, but no one responded. A belligerent note telling "Sam" to leave was taped to the door. Neighbors stated that they feared a woman was dead or seriously hurt inside. Based on the foregoing facts the Defendant Officers had objectively reasonable grounds to believe that an emergency situation existed justifying a warrantless entry and search of the apartment occupied by Plaintiffs to provide assistance to one of the female occupants or to assure her safety.

The court, therefore, concludes that there was no constitutional violation based on warrantless entry. Having decided that Plaintiffs have not suffered a constitutional violation, the court need not address whether the law was clearly established.

**2. Other Fourth Amendment Violations**

■ Plaintiffs also assert that "[e]ven if the initial entry was legal, defendants remained in the apartment too long [approximately 36 minutes according to Plaintiffs] and conducted an illegal, warrantless search and seizure." Pls['] Mem. Supp. at 21. As previously noted, "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). *See also Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) ("Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of oth-

ers"); *United States v. Wicks,* 995 F.2d 964, 970 (10th Cir.1993)("officers may ... conduct a warrantless search if they believe that their own lives or the lives of others are at risk").

After the announced forced entry, Officers found Plaintiff Foutz on the sofa in the living room with one hand concealed. When Foutz failed to comply with repeated commands that he show his hands he was sprayed in the face with "OC spray". He then struggled with Officers who subdued and handcuffed him. Drawing of weapons and use of handcuffs are permissible when officers have reasonable ground for fearing danger from a particular individual. *United States v. Carter,* 360 F.3d 1235, 1240 (10th Cir.2004). Here, heightened officer concern was reasonable due to the reports of a fight and screams for help coupled with the apartment's occupants failure to respond to calls and knocks at the door. Because of Foutz's repeated refusal to show his concealed hand and the lapse in time between entry and when Officers announced their intention to force entry, Officers could reasonably believe that Foutz had time to arm himself and was armed. Therefore Officer fear for their own safety was reasonable. Officers were also justified in detaining Foutz for questioning about possible criminal behavior based on his actions and the reports of witnesses of a female occupant in distress. *United States v. Quintana–Garcia,* 343 F.3d 1266, 1270 (10th Cir.2003)(internal quotation marks omitted) (brief detention permissible if based on "reasonable suspicion to believe that criminal activity may be afoot").

After subduing Foutz, Officers called for other occupants of the apartment to come out. One male and one female, latter identified as Plaintiffs Tims and Doxford, came out of a back bedroom. Officers then checked the remainder of the apartment and found a female, later identified as Plaintiff Carson, lying on a closet floor wearing a tank-top but no pants or underwear. Carson was motionless and did not at first respond to Officer calls. Officers found an unexplained hole in the bathroom door and an unexplained torn piece of clothing near where Carson was found on the closet floor. Plaintiffs were subsequently questioned, but were not forthcoming as to what had occurred in the apartment. Plaintiff Foutz was treated by paramedics for "OC spray". Contrary to their assertions, Plaintiffs were not "arrested", but detained by Officers during questioning.

Based on facts already stated, Officers were reasonably justified in searching the apartment to ascertain if one or more of the occupants was injured. Officers' decision to stay in the apartment and question Plaintiffs was reasonable under the circumstances. *See United States v. Brooks,* 367 F.3d 1128, 1137 (9th Cir.2004) (court agreed that because "a victim of domestic violence may deny an assault, especially when an abuser is present" officer's "decision to stay and ask more questions was a reasonable police procedure"). Officers were responding to a neighbor's call of a woman screaming for help. Officers entered and cleared the apartment and questioned the occupants about the neighbors' reports and about what they observed in the apartment. Plaintiffs were not forthcoming about what occurred and gave contradictory and implausible accounts of what occurred. No viable facts establish that Officers were not diligent in quickly pursuing their investigation.

**B. Municipal Liability**

Because the court finds no constitutional violation and because Plaintiffs have failed to produce any facts establishing municipal liability, Defendant West Valley City is also entitled to Summary Judgment.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED**. The Clerk of the Court is requested to enter final judgment for Defendants.

**IT IS SO ORDERED.**