[Cite as *State v. Link*, 2016-Ohio-4597.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2015-L-078** |
| - vs - | : | |
| RAYMOND LINK, III, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 14 CR 000806.

Judgment: Reversed and remanded.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Raymond Link, III, appeals from the June 5, 2015 judgment of the Lake County Court of Common Pleas, sentencing him for illegal assembly or possession of chemicals for the manufacture of drugs following a no contest plea. On appeal, appellant asserts the trial court erred in denying his motion to suppress. For the reasons that follow, we reverse and remand.

{¶2} On November 7, 2014, appellant was indicted by the Lake County Grand Jury on one count of illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the second degree, in violation of R.C. 2925.041, with a forfeiture specification pursuant to R.C. 2941.1417 and 2981.04. Appellant waived his right to be present at his arraignment and the trial court entered a not guilty plea on his behalf.

{¶3} On January 20, 2015, appellant, by and through court appointed counsel, filed a motion to suppress any and all evidence obtained by Lake County Narcotics Agency ("LCNA") pursuant to an unlawful search and seizure of his home on June 17, 2014. Appellant asserted that no specific and articulable facts existed to justify the warrantless entry into his residence. As such, appellant stressed that his due process rights and rights against unreasonable search and seizure were violated.[1] Appellee, the state of Ohio, filed a response on February 20, 2015.

{¶4} A hearing on appellant's motion to suppress was held on February 23, 2015. Two witnesses with LCNA testified for the state: Special Agents 76 and 88. Collectively, they established the following:

{¶5} An unidentified citizen informant called LCNA around noon on June 17, 2014.[2] She was a resident at Lakeway Woods, 5888 Buckeye Lane, Mentor-on-the-Lake, Ohio. The apartment building was a two story structure consisting of one and two bedroom units and was part of a large complex of buildings. The caller complained that toxic fumes or chemical smells had come from appellant's apartment (Apartment 4). LCNA agents were not sure when the odor was last detected but believed it was at the

---

1. Appellant filed a supplemental motion two days later.

2. The caller's name was not disclosed, however, her phone number was provided.

time of the noon-hour call.  The caller later advised the agents that appellant had left his apartment but that others were inside.

{¶6}    LCNA agents confirmed that appellant was the renter of the apartment. They looked him up in the National Precursor Log Exchange ("NPLEx") which showed that appellant had purchased pseudoephedrine nine times over the past three and a half months including a purchase that day from a local pharmacy.[3]  According to the agents, such purchases indicate that the individual is cooking methamphetamine or buying the pseudoephedrine to give to someone else to cook.  The agents also testified regarding the volatile nature of methamphetamine labs as well as the one-pot method of cooking methamphetamine.

{¶7}    LCNA agents decided to do a "knock and talk" at appellant's apartment to dispel their suspicions that his residence was being used to manufacture methamphetamine.  Special Agent 88 testified that a "knock and talk" investigation is used when authorities do not have enough probable cause to obtain a search warrant. Agent 76 testified that regardless of whether anybody opened the door or not, they still intended to go inside the apartment due to "exigent circumstances."  Prior to arriving at the apartment, LCNA agents made arrangements for other agents to be present, made contingency plans, and contacted Mentor-on-the-Lake police department to coordinate their visit and obtain a uniformed officer.

{¶8}    Although the caller placed the call around noon, agents did not go to appellant's apartment until 4:30 p.m.  Special agents 76 and 88 along with a uniformed police officer knocked on appellant's door.  Other agents set up surveillance in the area.

---

3. NPLEx is a real-time electronic logging system used by pharmacies and law enforcement to track sales of over-the-counter cold and allergy medications containing precursors to the illegal drug, methamphetamine.

3

Special agent 76 testified that when they arrived, they did not smell any chemical odor. The agents knocked on the apartment door. They heard whispering and shuffling inside but no one answered. The agents continued to knock.

{¶9} About five minutes later, Robert Kline opened the door. Another man, Anthony Sanguedolce, was seen coming out of the bathroom at the far end of the apartment. Both men appeared nervous. Neither Mr. Kline nor Mr. Sanguedolce was a tenant. They confirmed that appellant had left earlier and had not yet returned. The police officer checked their identities which revealed that both men had outstanding warrants. Mr. Kline and Mr. Sanguedolce were removed from the apartment. A NPLEx check showed that Mr. Sanguedolce recently purchased pseudoephedrine.

{¶10} The agents believed there was a strong possibility that methamphetamine was being or had been manufactured inside appellant's home. Special agents 76 and 88 decided to conduct a protective sweep of the apartment. Both agents testified that the purpose of the sweep was to check for other persons or weapons in the apartment or an active one-pot cook. Because the apartment was small and sparsely furnished, the sweep was rather quick. The sweep revealed that no one else was in the apartment and there was no obvious evidence of methamphetamine manufacturing. However, the agents noticed a white powdery substance on a nightstand along with a razor.[4] The agents also saw some black filled garbage bags. One bag contained opened pseudoephedrine packages. The agents secured the apartment and left.

{¶11} About an hour later, a detailed second search of appellant's apartment took place. This search was for the presence of chemicals and equipment for the production of methamphetamine. However, no methamphetamine was found. The

4. The white powder was later tested. It was not a controlled substance.

4

agents and the officer waited about 90 minutes for appellant to return to his apartment but he never did. The agents also questioned Mr. Sanguedolce who indicated he had bought pseudoephedrine from appellant and that the two of them were planning to give the pseudoephedrine to someone else to make methamphetamine. Thereafter, the agents secured the apartment and left.

{¶12} Following the hearing, the trial court denied appellant's motion to suppress.

{¶13} On April 17, 2015, appellant withdrew his former not guilty plea and entered an oral and written plea of no contest to a lesser-included offense which reduced the charge to a third-degree felony under R.C. 2925.041. The trial court accepted his plea four days later.

{¶14} On June 5, 2015, the trial court sentenced appellant to three years of community control, with various sanctions and conditions. Appellant filed a timely appeal and raises the following assignment of error:

{¶15} "THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS THE SEARCH OF HIS APARTMENT IN VIOLATION OF HIS RIGHTS TO DUE PROCESS AND TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 14 OF THE OHIO CONSTITUTION."

{¶16} In his sole assignment of error, appellant argues the trial court erred in denying his motion to suppress. He presents a single issue:

**{¶17}** "Neither probable cause or exigent circumstances exist to justify a warrantless search where narcotics agents arrive at an apartment to search for a potential methamphetamine lab four and a half hours after receiving an anonymous call regarding a chemical smell or toxic odor coming from the apartment of an individual whom agents learn has recently purchased pseudoephedrine, yet smell no chemical odor upon arriving and observe no other criminal activity."

**{¶18}** Unlike a plea of guilty, a plea of no contest does not preclude a defendant from asserting on appeal that the trial court erred in ruling on a motion to suppress. *State v. Delarosa*, 11th Dist. Portage No. 2003-P-0129, 2005-Ohio-3399, ¶25; Crim.R. 12(I).

**{¶19}** "'"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8, * * *, (* * *). During a hearing on a motion to suppress, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, * * *, (* * *) (1992). The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. *Burnside* at ¶8. Thereafter, the appellate court must determine, without deference to the trial court, whether the applicable legal standard has been met. *Bainbridge v. Kaseda*, 11th Dist. No. 2007-G-2797, 2008-Ohio-2136, ¶20. Thus, we review the trial court's application of the law to the facts de novo. *State v. McNamara*, 124 Ohio App.3d 706, 710, * * *, (* * *) (4th Dist.1997).' (Parallel citations omitted.) *State v. Haynes*, 11th Dist. Ashtabula No. 2012-A-0032, 2013-Ohio-2401, ¶36." *State v. Adams*, 11th Dist. Ashtabula No. 2015-A-0003, 2015-Ohio-5072, ¶7.

6

{¶20} "'The Fourth Amendment safeguards: "(t)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, *and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.*'" *State v. Andrews*, 177 Ohio App.3d 593, 2008-Ohio-3993, at ¶19, * * * quoting the Fourth Amendment to the United States Constitution. (Emphasis added by *Andrews* Court.)" *State v. Sutcliffe*, 11th Dist. Portage No. 2008-P-0047, 2008-Ohio-6782, ¶16. *See Andrews* at 598 ("The slow erosion of its protection for expediency's sake or the attitude that a warrant is just a 'technicality' should be troubling to all citizens but especially to the judicial branch, which is tasked with standing as the bulwark for our constitutional rights. The founders of our democracy courageously fought a tyrant who ordered warrantless searches of their homes and shops, and they created our cherished Bill of Rights in order to 'transform the aspiration for freedom and arbitrary government intrusion into the guarantees of fundamental law.' Samuel Dash, The Intruders (2004), 3.")

{¶21} "'"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York* (1980), 445 U.S. 573, 586 * * * (***) (citation omitted). The United States Supreme Court has made clear that "in terms that apply equally to seizures of property and seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." Id. at 590. "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Id.; see, also, *State v. Howard* (1991), 75 Ohio App.3d 760, 768 * * * (***); *State v. Martin,* 11th Dist. No. 2002-P-0072, 2004-

7

Ohio-3027, at ¶17.' *State v. Pape,* 11th Dist. No. 2004-A-0044, 2005-Ohio-4657, at ¶16. (Parallel citations omitted.)" *State v. Frye*, 11th Dist. Ashtabula No. 2007-A-0023, 2007-Ohio-6941, ¶24.[5]

**{¶22}** "The exigent circumstances doctrine requires that, in the absence of a search warrant, probable cause plus exigent circumstances are required to effectuate a warrantless entry of a home. *Kirk v. Louisiana* (2002), 536 U.S. 635, 637 * * *. Thus, even if the State establishes that probable cause to search the premises existed, this alone is insufficient, absent exigent circumstances, to overcome the strong presumption that a warrantless search or seizure is unconstitutional under the Fourth Amendment. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 468 * * * ('No amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances."')" *Pape, supra,* at ¶19.

**{¶23}** In this case, the trial court, in denying appellant's motion to suppress, cited to R.C. 2933.33(A) in its March 10, 2015 judgment entry. The General Assembly enacted R.C. 2933.33, effective May 17, 2006, codifying the "emergency aid doctrine," which is the exigent circumstances exception to the search warrant requirement for clandestine meth labs. R.C. 2933.33(A) provides:

---

5. Although we rely on the law in *Pape,* we note that the facts in that case involved a much more egregious situation than those in the instant case. In *Pape*, which was decided prior to the enactment of R.C. 2933.33, this court found exigent circumstances justifying a warrantless search of the defendant's home (police received a tip from an identified citizen informant regarding an active methamphetamine lab; a deputy approached the home on foot and saw a basement window that contained a small running fan; the deputy smelled an odor consistent with the production of methamphetamine; the deputy looked into the window and saw a hand covered with a blue glove holding a beaker or a glass jar and mixing a red substance that he believed to be red phosphorous, which is a substance used in the manufacture of methamphetamine; the deputy radioed other patrol units and other officers arrived; upon knocking on the door, an unidentified male opened it, then attempted to close it when he saw the deputies; and the male scuffled with police.)

{¶24} "If a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and reasonable grounds to believe that there is an immediate need to protect the lives, or property, of the officer and other individuals in the vicinity of the illegal manufacture."

{¶25} The trial court also stated the following in its entry:

{¶26} "The chemical odor or toxic fumes along with the volatile nature and risk of fire or explosion associated with a meth lab along with evidence that Link had been purchasing large amounts of medicine containing pseudoephedrine (including a purchase that day) provided probable cause and exigent circumstances to justify the entrance and search of Link's apartment."

{¶27} Based on the facts presented in the record before this court, we find that [removed] no "exigent circumstances" and "immediate need" existed under R.C. 2933.33(A), and more importantly no exigent circumstances existed under the basic principles of Fourth Amendment law under the United States Constitution, to justify the warrantless search of appellant's home.

{¶28} "'There is "no absolute test for the presence of exigent circumstances,"' therefore, courts are required to examine the unique facts of each controversy, *United States v. Wicks* (C.A.10, 1993), 995 F.2d 964, 970 (citations omitted). With respect to clandestine methamphetamine laboratories, other courts have determined that the 'basic aspects of the "exigent circumstances" exception are that (1) law enforcement

9

officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.' *United States v. Rhiger* (C.A.10, 2003), 315 F.3d 1283, 1288; *Wicks*, 995 F.2d at 970 (citation omitted); *Foutz v. West Valley City* (C.D.Utah 2004), 345 F. Supp. 2d 1272, 1275; *Lopkoff v. Slater* (D. Colo.1994), 898 F. Supp. 767, 775.

{¶29} "Applying the foregoing test, the courts have upheld limited warrantless searches when the odor of chemicals associated with methamphetamine production was detected coming from a residence, the observing officer had extensive knowledge of the particular dangers associated with an active methamphetamine lab, and there was no evidence offered that agents entered the home with an intent to arrest and seize evidence. *Rhiger*, 315 F.3d at 1290-1291[.]" *Pape, supra,* at ¶23-24.

{¶30} In this case, there were no exigent circumstances as there was no "immediate need" or emergency at hand, i.e., the agents waited four and a half hours after receiving the allegations from the caller before conducting the search (during which time they had the opportunity but never intended to obtain a search warrant). *See* R.C. 2933.33(A) (requiring "exigent circumstances" and "immediate need" in order to search without a warrant); *Pape, supra,* at ¶23. Clearly, waiting four and a half hours to implement a search does not support the state's argument related to the "immediate need" envisioned under R.C. 2933.33(A). It simply is not an emergency four and a half hours later. More importantly, it is a basic principle under the Fourth Amendment that a

10

warrant is required to search and seize articles inside a home unless there are exigent circumstances. As stated, no exigent circumstances existed in this case.

{¶31} Even when the agents arrived at appellant's apartment, they did not smell any chemical or toxic odor and did not observe any criminal activity. Although Mr. Kline and Mr. Sanguedolce appeared nervous in dealing with authorities, they did not attempt to flee or block access to appellant's apartment. When the apartment door opened, the agents observed nothing in plain view to indicate the presence of a methamphetamine lab. Although it was known that appellant had purchased pseudoephedrine, the agents acknowledged that individuals do purchase it for others to use in other locations. In fact, Mr. Sanguedolce told authorities that very same thing, i.e., that appellant had purchased pseudoephedrine for someone else to make elsewhere.

{¶32} Based on the facts presented, the warrantless search of appellant's home appears to be primarily motivated for the purpose of seizing evidence of criminal activity. Thus, because there were no exigent circumstances, the search of appellant's home, without a search warrant, was unlawful.

{¶33} For the foregoing reasons, appellant's sole assignment of error is well-taken. The judgment of the Lake County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this opinion.


THOMAS R. WRIGHT, J.,

CYNTHIA WESTCOTT RICE, P.J., concurs with a Concurring Opinion.

_____

11

CYNTHIA WESTCOTT RICE, P.J., concurs with a Concurring Opinion.

{¶34} I concur with the writing judge's disposition and analysis. I write separately to emphasize that the lack of exigent circumstances in this matter does not imply the officers lacked probable cause to obtain a search warrant and proceed with a constitutionally permissible search of the premises.

{¶35} Clandestine methamphetamine laboratories create such a danger to life and limb that, as a matter of law, probable cause to believe such a laboratory exists is an emergency justifying immediate action. As the writing judge notes, this policy is codified in R.C. 2933.33(A). In this case, however, the facts were insufficient to establish the premises was being used for the illegal manufacture of methamphetamine at the time of the search. Therefore, there were no exigent circumstances. *See State v. Zerucha*, 11th Dist. Ashtabula No. 2015-A-0031, 2016-Ohio-1300, ¶21 (noting R.C. 2933.33(A) did not apply because, even though they observed equipment for manufacture of methamphetamine *after* entering, "there was nothing, e.g., the pungent odor of methamphetamine manufacture, to suggest the lab was active at the time the officers lawfully entered the premises.")

{¶36} Accordingly, even though there was no emergency that would trigger R.C. 2933.33(A) and there were no circumstances to justify the search under the general exigency exception to the constitutional warrant requirement, there was probable cause to obtain a search warrant. Because officers proceeded to search appellant's residence without a warrant, it was unlawful.

{¶37} I accordingly concur.

12