[Cite as *State v. David*, 2017-Ohio-1102.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-A-0029** |
| NOLAN DAVID, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2014 CR 00310.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Gerald R. Walton* and John J. Schneider, Gerald R. Walton & Associates, 6060 Rockside Woods Boulevard, Spectrum Building, Suite 200, Independence, OH 44131 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Nolan David, appeals from the judgment entry of the Ashtabula County Court of Common Pleas, sentencing him to two years imprisonment upon his plea of guilty to illegal manufacture of drugs, a second degree felony, in violation of R.C. 2925.04(A)(C)(2). Appellant contends the trial court erred in denying his pre-sentence motion to withdraw his plea. We affirm the trial court's judgment.

**{¶2}** Appellant engaged in drug manufacturing with his uncle, Marc David, at the residence of appellant's grandfather, Norman David ("Norman"). The following facts are taken from the trial court's judgment entry denying Marc David's motion to suppress in a companion case to this matter, to wit: Case No. 2014-CR-307. The state submitted this judgment entry as an exhibit at the hearing on appellant's motion to withdraw his guilty plea, and the trial court made it part of the record.

**{¶3}** On May 18, 2014, at approximately 8:30 p.m., Patrolman Gary Nelson of the Jefferson Police Department was dispatched to the Speedway gas station in Jefferson to meet with Harry Powell, who was concerned about possible drug-related activity at a residence near his own. Mr. Powell advised the officer he had smelled an ammonia-like odor emanating from the residence located at 128 Uselma Avenue, Norman's residence. Mr. Powell also indicated that he had observed appellant and a thin, white female frequently entering and exiting the garage at the residence. Mr. Powell had also heard an individual inside the garage admonish the female for smoking near the garage, warning her that she would "blow up the garage." Mr. Powell expressed concern for Norman's well being. Mr. Powell provided the officer with the license-plate number of a vehicle that was often parked at the residence and driven by the thin female. Officer Nelson learned that the car was registered to Samantha Buehner.

**{¶4}** Officer Nelson knew Norman and also was aware that Norman was elderly. Given Mr. Powell's statements, the officer went to the residence, but did not observe anyone near the garage, and did not smell any unusual chemical odor. At shift change, near 11:00 p.m. that night, Officer Nelson advised Officer Anthony Wood of Mr. Powell's statement regarding possible drug activity at 128 Uselma Avenue. The officers

2

returned to the residence and knocked on the door for approximately 10-15 minutes. No one answered the door. The car registered to Ms. Buehner was still in the driveway. The officers obtained a phone number for the residence and were able to contact Norman by phone. Norman advised the officers he was upstairs and bedridden. Norman invited the officers into the home so they could speak with him. After entering the residence, Officer Wood noted he smelled marijuana when he entered the home.

{¶5}   Officer Nelson advised Norman that a concerned neighbor believed there might be drug activity going on in his garage. Officer Nelson explained that the neighbor had smelled a chemical-like odor coming from the garage. Norman accordingly gave the officers consent to look in the garage and requested they let him know if they found anything.

{¶6}   Upon approaching the garage, the officers determined the door was locked. The officers advised Norman, who provided them with a key to enter the garage. When they entered the garage, Officer Nelson smelled a strong odor of suspected marijuana. Officer Nelson observed a large amount of marijuana on a chair in the garage. The officer also noticed two additional large bags containing a large amount of suspected marijuana. He further observed a glass bowl that had dried residue on it and bottles of butane. Officer Wood observed several items he associated with the manufacture of methamphetamine and hashish. Officer Nelson took photographs of the items then the officers left the garage.

{¶7}   While the officers were discussing the need to obtain a search warrant and for more personnel, Officer Nelson observed a light go on and off in the basement of the residence. The officers also heard voices coming from the basement. Officer Nelson testified that he did not see anyone arrive at or leave the residence, and no one

3

responded when the officers initially announced their presence inside the house. He therefore concluded that whoever was in the basement had been there the entire time.

{¶8} Officer Wood and two other officers entered the home and announced their presence, advising anyone there to "come out now." The officers yelled into the basement numerous times, but no one responded. The officers conducted a protective sweep of the residence, in the interest of officer safety and the safety of Norman David. In the course of the sweep, they entered the basement and saw a light coming from under a door underneath the stairs. The officers opened the door and discovered a large, sophisticated marijuana-growing operation, including 50 to 100 marijuana plants.

{¶9} Officer Wood and another officer then went upstairs to the second floor of the residence and discovered appellant with Samantha Bruehner in a bedroom across from Norman's room. Officer Wood testified that these individuals were lying on a bed but sweating profusely. Michelle David was found in a separate, upstairs bedroom.

{¶10} Officer Wood then left the scene and returned with a search warrant. Upon executing the search warrant, they found dozens of marijuana bags, numerous magazines on growing marijuana, and over $8,000.00 in cash in a room they determined to be appellant's bedroom. Ephedrine, a product used in the manufacture of methamphetamine, and large amounts of powder methamphetamine were also discovered in that bedroom. A large number of other items were taken into evidence, including a one-pot meth lab that was discovered in the garage.

{¶11} Appellant was arrested and the Ashtabula County Grand Jury returned a six-count indictment against him: Count One, aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(1)(d), a first-degree felony; Count Two, illegal manufacture of drugs, in violation of R.C. 2925.04(A)(C)(3)(a), a second-degree felony;

4

Count Three, illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.04, a third-degree felony; Count Four, illegal manufacture of drugs, in violation of R.C. 2925.04(A)(C)(2), a second-degree felony; Count Five, illegal manufacture or cultivation of marijuana, in violation of R.C. 2925.04(A)(C)(5)(d), a third-degree felony; and Count Six, possession of marijuana, in violation of R.C. 2925.11(A)(C)(3)(d), a third-degree felony.  Attached to each count was a forfeiture specification regarding the money seized at Norman's residence.  Appellant was arraigned and entered pleas of not guilty to all charges.

{¶12}  On May 21, 2015, a change of plea hearing was held.  Appellant pleaded guilty to Count Four of the indictment, and the trial court nolled the remaining counts on the state's motion.  The state suggested a minimum sentence of two years.  Sentencing was set for a future date.

{¶13}  On September 22, 2015, appellant discharged appointed counsel, and newly-retained counsel entered his appearance.  Appellant subsequently moved to withdraw his guilty plea.  He later supplemented the motion. During a hearing on the motion, the state submitted certain exhibits, including the judgment entry in the companion case.  Appellant argued his previously-appointed counsel had been ineffective for failing to move to suppress, but presented no evidence.  The trial court denied the motion to withdraw from the bench, and proceeded to sentencing.  The trial court memorialized its rulings in separate judgment entries filed March 4, 2016.

{¶14}  Mr. David timely noticed this appeal, assigning a single error:

{¶15}  "The trial court erred when it denied defendant appellant's motion to withdraw plea due to ineffective assistance of counsel."

{¶16} Crim.R. 32.1 governs a pre-sentence motion to withdraw a guilty plea and provides: "(a) motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The rule, however, provides no guidelines for a trial court to use when ruling on a presentence motion to withdraw a guilty plea. *State v. Xie*, 62 Ohio St.3d 521, 526 (1992).

{¶17} A pre-sentence motion to withdraw a guilty plea filed before sentencing should be freely granted and treated with liberality. *Id.* Still, there is no inherent right to withdraw a guilty plea. *Id.* Appellate review of a trial court's denial of a motion to withdraw is limited to a determination of abuse of discretion. *Id.* The phrase "abuse of discretion" is one of art, indicating judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678, (1925).

{¶18} When evaluating motions to withdraw guilty pleas, this court has traditionally applied the four-part test formulated by the Eighth District Court of Appeals in *State v. Peterseim*, 68 Ohio App.2d 211 (8th Dist. 1980), at paragraph three of the syllabus, as follows:

> {¶19} A trial court does not abuse its discretion in overruling a motion to withdraw a guilty plea: (1) where the accused is represented by competent counsel, (2) where the accused was given a full hearing, pursuant to Crim.R. 11, before he or she entered the plea, (3) when, after the motion to withdraw is filed, the accused is afforded a full and impartial hearing on the motion, and (4) where the record demonstrates that the court gave complete and fair consideration to the plea withdrawal request.

**{¶20}** Appellant's sole objection is the quality of representation he received from appointed counsel, the first *Peterseim* factor. Again, he argues she was ineffective for failing to move to suppress.

**{¶21}** "'"In order to prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, (1984), 466 U.S. 668, * * * (* * *). *State v. Ziefle*, 11th Dist. No. 2007-A-0019, 2007-Ohio-5621, at ¶20. Thus, appellant must show that counsel's performance was deficient and "must also show prejudice resulting from the deficient performance." *State v. Jackson*, 11th Dist. No. 2002-A-0027, 2004-Ohio-2442, at ¶9." (Parallel citations omitted.) *State v. Balch*, 11th Dist. Portage No. 2008-P-0014, 2008-Ohio-6780, ¶18.

**{¶22}** "'"Failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" *State v. Madrigal*, 87 Ohio St.3d 378, 389 * * * (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 * * * (1986). '"When claiming ineffective assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence in the record showing there was a reasonable probability the result of (the proceeding) would have differed if the motion had been filed or pursued."' *State v. Weimer*, 11th Dist. Lake No. 2013-L-008, 2013-Ohio-5651, ¶38, quoting *State v. Walker*, 11th Dist. Lake No. 2009-L-155, 2010-Ohio-4695, ¶15." (Parallel citations omitted.) *State v. Kirschenmann*, 11th Dist. Portage Nos. 2014-P-0031 and 2014-P-0032, 2015-Ohio-3544, ¶17.

**{¶23}** The problem with appellant's contention is that he failed to produce sufficient evidence of prejudice to sustain his burden on the claim of ineffectiveness. At the hearing on appellant's motion to withdraw, the trial court's judgment entry denying a motion to suppress evidence filed by appellant's co-defendant was admitted into

7

evidence. In that judgment, the trial court found that Officer Nelson was advised by Norman's neighbor that an unusual, ammonia-like odor was emanating from the David residence; that appellant and a thin, white female were seen regularly entering and exiting the garage of the residence; and that the female was rebuked for smoking outside the garage because she would blow up the structure.

{¶24} Based upon the statement, Officer Nelson arrived at the David residence, but did not observe anyone in or near the garage, and did not detect any strange odors. He later returned with Officer Wood and contacted Norman by phone. Norman, confined to a bed in the upstairs of the residence, invited them into the home. The officers smelled marijuana upon entering the residence. After advising Norman of his neighbor's concerns, he gave the officers consent to enter and search the garage, where they discovered marijuana and various other drug paraphernalia. The officers subsequently noticed a light go on and off in the basement and heard voices.

{¶25} The officers re-entered the home and conducted a protective sweep, in the interest of the safety of both the officers and Norman, as well as the preservation of potential evidence. After loudly announcing their presence and receiving no response, they entered the basement and discovered a large marijuana-growing operation. They then ascended to the second floor where they discovered appellant and Samantha Bruehner. Upon execution of a search warrant, additional contraband was found.

{¶26} Although there were no exigent circumstances justifying the warrantless search and seizure, Officer Nelson procured Norman's consent to initially enter the home and search the garage. Consent to search is a well-established exception to the Fourth Amendment's warrant requirement. No Fourth Amendment violation occurs when an individual voluntarily consents to a search. *United States v. Drayton*, 536 U.S.

194, 207 (2002). Voluntariness is evaluated under the totality of the circumstances. *State v. Robinette*, 80 Ohio St.3d 234 (1997). In *Robinette,* at 242-243, the Ohio Supreme Court held:

> **{¶27}** We find [*Schneckloth v.*] *Bustamonte* [412 U.S. 218 (1973)] instructive in defining when permission to search is truly consensual under the totality of the circumstances:

> **{¶28}** "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id.* at 412.

**{¶29}** The factual findings from the trial court's denial of the motion to suppress filed by appellant's co-defendant illustrate that Nelson was neither in custody, nor subject to duress or coercion. The officers notified Nelson of his neighbor's observations and concerns and Nelson gave them permission to enter and search the garage. There is nothing to suggest Nelson's consent was anything but voluntary.

**{¶30}** After discovering marijuana and hashish/meth-related paraphernalia in the garage, the officers subsequently noticed lights flickering in the basement and heard unidentifiable voices coming from the home. After loudly announcing their presence and demanding anyone present to "come out now," they conducted a protective sweep of the basement and second floor.

**{¶31}** "In order for officers to undertake a protective sweep of an area, 'they must articulate facts that would warrant a reasonably prudent officer to believe that the area to be swept harbored an individual posing a danger to those on the scene.'" *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶188, quoting *United States v. Biggs*,

9

70 F.3d 913, 915 (6th Cir.1995).  In light of the officers' discovery of the contraband in the garage, as well as the notable odor of marijuana in the residence, the officers could reasonably conclude that any potential suspects, if discovered, might become violent in order to avoid capture or protect the contraband.  The officers were therefore justified in conducting a protective sweep for both their safety as well as Norman's.

{¶32}  With the above in mind, we hold that, even if appellant's trial counsel should have filed a motion to suppress evidence,  appellant has failed to demonstrate a reasonable probability that the motion would have been granted.   Appellant has therefore failed to establish the prejudice prong of *Strickland*.  Accordingly, the trial court did not abuse its discretion in denying appellant's presentence motion to withdraw his guilty plea.

{¶33}  Appellant's assignment of error lacks merit.

{¶34}  For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J., concurs with a Concurring Opinion,
COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____


DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

{¶35}  I concur fully in this court's judgment and opinion.  I write separately to note that, because David entered a plea of guilty, any issues concerning the suppression of evidence are moot.  "The plea of guilty is a complete admission of the

10

defendant's guilt." Crim.R. 11(B)(1). Thus, the issue of whether counsel was ineffective for failing to file a motion to suppress is largely irrelevant.

{¶36} "This court has repeatedly held that '[a] plea of guilty or no contest waives any prejudice a defendant suffers arising out of his counsel's alleged ineffective assistance, except with respect to a claim that the particular failure alleged impaired the defendant's knowing and intelligent waiver of his right to a trial.'" (Citation omitted.) *State v. Bregitzer*, 11th Dist. Portage No. 2012-P-0033, 2012-Ohio-5586, ¶ 17.

{¶37} With respect to suppression issues, a guilty plea precludes claims of ineffective assistance because the offender is unable to demonstrate the prejudice necessary to support such a claim.

> [T]he failure to suppress evidence has no prejudicial impact upon a conviction based on a guilty plea "because the conviction does not result from the unsuppressed evidence, but from the defendant's admission, by his plea, of the facts alleged in the [indictment]. Thus, a failure to suppress evidence resulting from a deficiency in trial counsel's legal representation will not satisfy the prejudice prong of * * * *Strickland v. Washington, [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]." See State v. Fitzgerald*, 2nd Dist. Greene No. 2001-CA-124, 2002-Ohio-3914, ¶44. This court followed the Second District's holding in *Fitzgerald* in *State v. Bregitzer*, 11th Dist. Portage No. 2012-P-0033, 2012-Ohio-5586, ¶17.

*State v. Strong*, 11th Dist. Ashtabula No. 2013-A-0003, 2013-Ohio-5189, ¶ 31; *State v. Bump,* 11th Dist. Ashtabula No. 2010-A-0028, 2011-Ohio-6687, ¶ 42 ("[a] plea of guilty operates as a waiver of any alleged error regarding appellant's motion to suppress").

**{¶38}** Accordingly, I respectfully concur.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

**{¶39}** I respectfully dissent.

**{¶40}** Appellant contends the search and seizure at his grandfather's residence violated the Fourth Amendment. We recently summarized the law of search and seizure in *State v. Link*, 11th Dist. Lake No. 2015-L-078, 2016-Ohio-4597, ¶20-22:

**{¶41}** """The Fourth Amendment safeguards: '(t)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, *and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" State v. Andrews*, 177 Ohio App.3d 593, 2008-Ohio-3993, * * * at ¶19, (* * *) quoting the Fourth Amendment to the United States Constitution. (Emphasis added by *Andrews* Court.)' *State v. Sutcliffe*, 11th Dist. Portage No. 2008-P-0047, 2008-Ohio-6782, * * * ¶16. *See Andrews* at 598 ∗ ∗ ∗ ('The slow erosion of its protection for expediency''s sake or the attitude that a warrant is just a "technicality" should be troubling to all citizens but especially to the judicial branch, which is tasked with standing as the bulwark for our constitutional rights. The founders of our democracy courageously fought a tyrant who ordered warrantless searches of their homes and shops, and they created our cherished Bill of Rights in order to

12

"transform the aspiration for freedom and arbitrary government intrusion into the guarantees of fundamental law." Samuel Dash, The Intruders (2004), 3.')

{¶42} "'"'It is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable.' *Payton v. New York* (1980), 445 U.S. 573, 586, (* * *) (* * *) (citation omitted). The United States Supreme Court has made clear that 'in terms that apply equally to seizures of property and seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.' *Id.* at 590, * * *. 'Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.' *Id.*; see, also, *State v. Howard* (1991), 75 Ohio App.3d 760, 768, (* * *) (* * *); *State v. Martin*, 11th Dist. No. 2002-P-0072, 2004-Ohio-3027, * * * at ¶17." *State v. Pape*, 11th Dist. No. 2004-A-0044, 2005-Ohio-4657, * * * at ¶16. (Parallel citations omitted.)' *State v. Frye*, 11th Dist. Ashtabula No. 2007-A-0023, 2007-Ohio-6941, * * * ¶24.

{¶43} "'The exigent circumstances doctrine requires that, in the absence of a search warrant, probable cause plus exigent circumstances are required to effectuate a warrantless entry of a home. *Kirk v. Louisiana* (2002), 536 U.S. 635, 637, * * *. Thus, even if the State establishes that probable cause to search the premises existed, this alone is insufficient, absent exigent circumstances, to overcome the strong presumption that a warrantless search or seizure is unconstitutional under the Fourth Amendment. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 468, * * * ("No amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'")' *Pape*, *supra*, at ¶19." (Parallel citations omitted.) (Footnote omitted.)

{¶44} The situation presented in *Link* parallels that presented here. In that case, police received a tip that a methamphetamine laboratory was being operated from

appellant's home, and waited more than four hours to conduct a search, during which they never sought a search warrant. In this case, Patrolman Nelson received a tip of a possible methamphetamine operation from Mr. Powell at about 8:30 p.m., but did not seek a search warrant during the intervening two and one-half hours before he and Officer Wood went to Norman David's home. In *Link*, the trial court found exigent circumstances, because of the possibility that a methamphetamine laboratory was being operated, pursuant to R.C. 2933.33(A). *Link, supra*, at ¶23. As we observed:

**{¶45}** "[R.C. 2933.33(A) provides:] 'If a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and reasonable grounds to believe that there is an immediate need to protect the lives, or property, of the officer and other individuals in the vicinity of the illegal manufacture.'

**{¶46}** "* * *

**{¶47}** "* * *

**{¶48}** "Based on the facts presented in the record before this court, we find that no 'exigent circumstances' and 'immediate need' existed under R.C. 2933.33(A), and more importantly no exigent circumstances existed under the basic principles of Fourth Amendment law under the United States Constitution, to justify the warrantless search of appellant's home.

**{¶49}** ""There is 'no absolute test for the presence of exigent circumstances,'" therefore, courts are required to examine the unique facts of each controversy, *United States v. Wicks* (C.A.10, 1993), 995 F.2d 964, 970 (citations omitted). With respect to

14

clandestine methamphetamine laboratories, other courts have determined that the "basic aspects of the 'exigent circumstances' exception are that (1) law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched." *United States v. Rhiger* (C.A.10, 2003), 315 F.3d 1283, 1288; *Wicks*, 995 F.2d at 970 (citation omitted); *Foutz v. West Valley City* (C.D.Utah 2004), 345 F.Supp.2d 1272, 1275; *Lopkoff v. Slater* (D.Colo.1994), 898 F.Supp. 767, 775.

{¶50} "'Applying the foregoing test, the courts have upheld limited warrantless searches when the odor of chemicals associated with methamphetamine production was detected coming from a residence, the observing officer had extensive knowledge of the particular dangers associated with an active methamphetamine lab, and there was no evidence offered that agents entered the home with an intent to arrest and seize evidence. *Rhiger*, 315 F.3d at 1290-1291(.)' *Pape*, *supra*, at ¶23-24." *Link*, *supra*, at ¶24-29.

{¶51} In this case, Patrolman Nelson had checked Norman David's residence immediately after speaking with Mr. Powell, and found nobody at the garage, and no smell or other evidence of methamphetamine production. No exigent circumstances appear to have existed for the warrantless search and seizure which occurred later that evening.

{¶52} We are constrained by the lack of a factual record in this case. Appellant's attorney subpoenaed Patrolman Nelson to testify at the hearing on the

15

motion to withdraw, but the trial court quashed the subpoena. Based on the foregoing application of the law to the limited facts presented in the record, there seems to have been a reasonable probability the results in this case would have been different if appointed counsel had moved to suppress, since the warrantless search which occurred appears to have been unlawful, at least in part.

{¶53} For the above reasons I respectfully dissent.